**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 35848**

DAVID and KATHY PARKER, )
)
    Plaintiffs-Appellants, )
)
v. )
)
IDAHO STATE TAX COMMISSION, )
)
    Defendant-Respondent. )

Boise, December 2009 Term

2010 Opinion No. 27

Filed: March 17, 2010

Stephen Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

The decision of the district court is <u>affirmed</u>.

Lawrence G. Sirhall Jr., Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Lawrence Allen argued.

_____

HORTON, Justice

This appeal involves Idaho state income tax payments by David and Kathy Parker for income earned in 2003 and 2004. The Idaho State Tax Commission (the Commission) determined that the Parkers' tax payments were deficient for those years. David and Kathy sought review by the district court. The district court granted summary judgment in favor of the Commission. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Parkers were married at all times during 2003 and 2004 ("the relevant years"). Kathy was domiciled in Idaho and David was domiciled in Nevada throughout this time. The Parkers filed income tax returns with both the Internal Revenue Service and the Commission declaring their status as "married filing joint" for the relevant years. Nevada does not impose an individual income tax, so the Parkers did not file tax returns with that state. On their Idaho returns for the relevant years, the Parkers reported only the income earned by Kathy while she was domiciled in Idaho and did not report the income earned by David.

- 1 -

The Commission conducted an audit of the Parkers' returns for the relevant years and determined that one-half of the income earned by David was subject to Idaho income tax because Kathy was entitled to one-half of the Nevada income as community property. On April 2, 2007, the Commission issued a notice of deficiency to the Parkers, and on May 3, the Parkers' accountant filed a petition for redetermination and asked the Commission for a hearing. Following the hearing, the Commission issued a decision[1] upholding the determination that the Parkers owed income tax on one-half of the income earned by David while domiciled in Nevada for the relevant years.

The Parkers timely filed a petition for judicial review of the Commission's amended decision on February 22, 2008 and made the security deposit required by I.C. § 63-3049. The Parkers alleged that the Commission's determination was "capricious, without a basis in law or fact, arbitrary and otherwise erroneous." The Commission responded on March 14, 2008, pointing out that the action should proceed as a *de novo* proceeding pursuant to I.C. § 63-3049, rather than as a petition for review, and therefore filed an answer to what it termed the Parkers' "complaint." On June 24, 2008, the parties filed a statement of "Stipulated Facts" which specified, among other things, that the sole issue before the district court was whether the Commission erred when it determined that one-half of the income earned by David while he was domiciled in Nevada is subject to Idaho income tax.

On July 1, 2008, the Parkers filed a motion for summary judgment requesting the court to require the Commission to recalculate the Parkers' income tax without the inclusion of David's income. The Parkers also filed an affidavit from David in which he stated that he did not receive any financial assistance from Kathy or have any Idaho-sourced income during the years in question. The Commission filed a responsive "Affidavit of Jim Gunter Regarding Summary Judgment" on July 18, 2008. Gunter is the tax specialist with the Commission who conducted the redetermination in the Parkers' case. Although styled as an "affidavit," this document is something between an affidavit and a legal brief in which Gunter expresses his opinions as to questions of tax and community property law. In the affidavit, Gunter asserted that David would have been required to file an Idaho income tax return even if he and Kathy had filed separate returns due to David's share of the taxable income from certain Idaho real estate income pass-

---

[1] The decision was later amended to correct a clerical error.

through entities.  The Parkers moved to strike this opinion on the basis that it was a legal conclusion that was for the court to make and as speculative and irrelevant.

On October 23, 2008, the district court issued its combined "Order Denying [the Parkers'] Motion to Strike," "Order Denying [the Commission's] Motion to Strike," "Order Granting [the Commission's] Motion for Summary Judgment," and "Order Denying [the Parkers'] Motion for Summary Judgment."  The court found that the Parkers were not entitled to equitable relief under Idaho law.  The court also rejected the Parker's claim that the Commission's determination violated the Due Process Clause and the Commerce Clause.  The Parkers timely appealed from the district court's final judgment in which the Commission was awarded $36,709.

## II. STANDARD OF REVIEW

A taxpayer may appeal a determination by the Commission by filing a complaint against the Commission in district court.  I.C. § 63-3049.  The case is to proceed as a *de novo* bench trial.  I.C. § 63-3049; *cf.* I.C. § 63-3812(c).[2]  A deficiency determination issued by the Commission is presumed to be correct, and the burden is on the taxpayer to show that the Commission's decision is erroneous.  *Albertson's Inc. v. State Dep't of Revenue*, 106 Idaho 810, 814, 683 P.2d 846, 850 (1984).

> When this Court reviews a district court's decision on summary judgment, it employs the same standard as that properly employed by the trial court when originally ruling on the motion.  Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  I.R.C.P. 56(c).

---

[2]  Idaho Code § 63-3049 does not explicitly state that an application for review of a decision by the Commission, filed directly with the district court is to be heard *de novo*.  Rather, I.C. § 63-3049(a) provides, in pertinent part, as follows:

> Redetermination by the state tax commission may be reviewed . . . by a complaint filed by the taxpayer against the state tax commission within ninety-one (91) days after the receipt of notice of the decision of the state tax commission denying, in whole or in part, any protest of the taxpayer or, within the same period, by filing an appeal with the board of tax appeals.  Upon the serving of summons upon the state tax commission *the case shall proceed as other civil cases* but may be heard by the judge in chambers.

(emphasis added).

In the event that the taxpayer appeals to the board of tax appeals, subsequent proceedings before the district court are governed by I.C. § 63-3812(c).  That statute provides that appeals to the district court  "shall be heard and determined by the court without a jury in a trial de novo on the issues in the same manner as though it were an original proceeding in that court."

As these statutes are *in pari materia*, we conclude that the emphasized language of I.C. § 63-3049 directs that the district court proceedings are to be conducted *de novo* without the right to a jury trial.

*Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997) (internal citations omitted).

### III. ANALYSIS

The district court upheld the Commission's decision that one-half of David's Nevada earnings were taxable because, by operation of Idaho community property law, those earnings are income attributable to Kathy. The Parkers urge on appeal that the district court erred in not applying Nevada community property law, in not concluding that taxing one-half of David's earnings would violate due process, and in not striking the portions of Gunter's affidavit that asserted that David received income generated in Idaho. The Parkers also allege that the district court erred in not holding that taxing one-half of David's Nevada earnings would violate the Commerce Clause. Finally, the Parkers contend that the district court erred in not reading federal provisions for equitable relief into Idaho tax law. The Commission seeks attorney fees on appeal.

### A. We decline to address whether the district court erred in applying Idaho rather than Nevada community property law.

The Parkers argue that the district court erred in applying Idaho rather than Nevada community property law and that under Nevada law, David's earnings during the years in question might be considered separate property. Specifically, the Parkers allege that the district court erred in only discussing Idaho community property law when the Commission, in its amended decision, discussed both Idaho and Nevada community property law. The Parkers, however, stipulated before the district court that "[t]he Audit Division determined that one-half of the income earned by Mr. Parker while he was domiciled in Nevada was subject to Idaho income tax because under the community property laws of Idaho, Ms. Parker was entitled to one-half of the Nevada income." There is no indication in the record that the Parkers said anything more regarding the choice of law to the district court, and the district court did not address the issue or mention Nevada community property law in its decision. Accordingly, we decline to address the choice of law issue for the first time on appeal. *Dunn v. Baugh*, 95 Idaho 236, 238, 506 P.2d 463, 465 (1973).

### B. We affirm the district court's holding that the taxation of Kathy's one-half interest in David's Nevada earnings does not violate due process.

The Parkers assert that the State of Idaho (the State), through the Commission, violates due process when it taxes income earned outside of its borders.

It is undisputed that during the relevant years, Kathy was an Idaho resident and that she and David were married. Idaho Code § 32-906 provides that property acquired after marriage is community property, subject to exceptions not present in this case. This includes a spouse's earnings. *Suter v. Suter*, 97 Idaho 461, 466, 546 P.2d 1169, 1174 (1976). As David's earnings during the relevant years were community property, Kathy's one-half interest in those earnings were subject to federal taxation. *Forbush v. Commissioner,* T.C. Memo. 1979-214, 38 T.C.M. (CCH) 871, 1979 WL 3279 (U.S.Tax Ct.) (citing *Hopkins v. Bacon,* 282 U.S. 122 (1930); *Goodell v. Koch,* 282 U.S. 118 (1930); *Poe v. Seaborn,* 282 U.S. 101 (1930)). *See also Babcock v. Commissioner,* T.C. Memo. 1979-372, 39 T.C.M. 139 (CCH), 1979 WL 3424 (U.S.Tax Ct.).

Idaho's taxation scheme mirrors that of federal law. "It is the intent of the [Idaho] legislature . . . insofar as possible to make the provisions of the [Idaho Income Tax Act] identical to the provisions of the Federal Internal Revenue Code relating to the measurement of taxable income . . . ." I.C. § 63-2002. Therefore, for purposes of computing Idaho taxable income, just as in computing federal taxable income, one-half of David's earnings are included in determining Kathy's gross income. The question is whether the fact that this income derived from Nevada somehow precludes the State from taxing it.

This Court answered the question whether the State may tax income earned outside of its borders in *Herndon v. West*, 87 Idaho 335, 393 P.2d 35 (1964). In that case, the taxpayer was a resident of Idaho and was also a general partner in an Oklahoma business from which she derived income. *Herndon*, 87 Idaho at 338, 939 P.2d at 36. The taxpayer argued that the State's attempt to tax her Oklahoma income violated her rights under the Fourteenth Amendment to the United States Constitution. *Id.* at 340, 939 P.2d at 37. This Court stated that:

> The Supreme Court of the United States has made it clear that a state has the power to tax in relation to a resident's income derived from sources outside the State and that there is nothing in the Federal Constitution to prevent the exercise of such power. The rationale for allowing a state to compute a tax on income earned elsewhere is based on the premise that inhabitants are supplied many services by their state of residence and should contribute toward the support of the state, no matter where their income is earned.

*Id.* (citations omitted).

During the relevant years, Kathy was a resident of Idaho and derived income from her one-half interest in David's earnings in Nevada. Kathy was supplied many services by the State,

and there is nothing in the Constitution to prevent the State from taxing her income in return—regardless of the fact that the income was derived from a source outside of the State.

The Parkers argue, however, that taxing one-half of David's Nevada income violates David's due process rights because the only contacts he has with Idaho are his marriage to Kathy. With respect to the earnings that the Commission seeks to tax, however, David's contacts with the State are irrelevant.[3] In taxing one-half of David's Nevada earnings, the Commission is not seeking to impose a tax on David, but rather on Kathy. As stated, one-half of David's earnings were income attributable to Kathy for purposes of taxation. Kathy was a resident of Idaho. There is nothing in the Commission's act of taxing Kathy's income, even though derived from David's earnings in Nevada, that offends due process.

## C. We affirm the district court's holding that taxing of one-half of David's Nevada earnings does not violate the Commerce Clause.

The Parkers also argue that taxing one-half of David's Nevada earnings violates the Commerce Clause. The Commission argues that because it is only seeking to tax Kathy's income, albeit income derived from David's Nevada earnings, the Commerce Clause is not implicated in this case.

"To show that the Commerce Clause is implicated by a tax statute, [a taxpayer] must demonstrate that the state's taxation of [her] entire income has a substantial effect on an identifiable interstate economic activity or market." 71 Am. Jur. 2d State and Local Taxation § 391 (2009) (citing *Stelzner v. Comm'r of Revenue*, 621 N.W.2d 736, 740 (Minn. 2001)).

> "The dormant Commerce Clause protects markets and participants in markets, not taxpayers as such." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 300 . . . (1997). Therefore, the dormant Commerce Clause will not apply unless there is actual or prospective competition between entities in an identifiable market *and* state action that either expressly discriminates against or places an undue burden on interstate

---

[3] The district court rejected the Parkers' argument by pointing out that

> [t]here is evidence in the record sufficient to conclude that during the years at issue, Mr. Parker had an interest in income producing property located in Idaho. Further, half of the marital community was domiciled in Idaho. Mr. Parker has sufficient minimum contacts with the state of Idaho to subject him to income tax in the state.

Presumably, the evidence that the district court was referring to is the information in Gunter's affidavit, contained in paragraph 24, which indicates that David had taxable income derived from Idaho sources during the years in question. Accordingly, even if the district court erred in refusing to strike paragraph 24 of Gunter's affidavit as the Parkers now urge, such error would be harmless, and we therefore need not address the issue. I.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.")

commerce. *Tracy*, 519 U.S. at 300 . . . . Furthermore, this impact must be more than merely incidental. *United States v. Lopez,* 514 U.S. 549, 559 . . . (1995).

*Stelzner*, 621 N.W.2d at 740-41.

In order to show that the Commerce Clause is implicated in this case, the Parkers would need to show that the State's taxation of Kathy's entire income has a substantial effect on an identifiable interstate economic activity or market. They have failed to identify any interstate economic activity or market that is burdened by the taxation of Kathy's Nevada income.

The Commerce Clause is not implicated in this case. Although the district court did not reach this same conclusion, it did ultimately hold that the Commerce Clause would not be violated by the Commission taxing Kathy's Nevada income. Thus, we affirm the district court's decision to grant summary judgment in favor of the Commission on this issue, albeit for a different reason.

**D. We affirm the district court's decision not to read the federal provisions for equitable relief urged by the Parkers into Idaho tax law.**

The Parkers argue that the district court erred in not reading into Idaho law two federal provisions that they claim would offer them equitable relief from paying income tax on one-half of David's Nevada earnings. The Parkers first argue that Idaho law should include the equivalent of 26 U.S.C. § 66, entitled "Treatment of Community Income," specifically section (c), which states:

> **(c) Spouse relieved of liability in certain other cases**
> Under regulations prescribed by the Secretary, if—
> **(1)** an individual does not file a joint return for any taxable year,
> **(2)** such individual does not include in gross income for such taxable year an item of community income properly includible therein which, in accordance with the rules contained in section 879 (a), would be treated as the income of the other spouse,
> **(3)** the individual establishes that he or she did not know of, and had no reason to know of, such item of community income, and
> **(4)** taking into account all facts and circumstances, it is inequitable to include such item of community income in such individual's gross income,
> then, for purposes of this title, such item of community income shall be included in the gross income of the other spouse (and not in the gross income of the individual). Under procedures prescribed by the Secretary, if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either) attributable to any item for which relief is not available under the preceding sentence, the Secretary may relieve such individual of such liability.

The Parkers further urge that Idaho law should include the equivalent of 26 U.S.C. § 6015, entitled "Relief from joint and several liability on joint return," section (f) of which states:

> **(f) Equitable relief**
> Under procedures prescribed by the Secretary, if—
> **(1)** taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
> **(2)** relief is not available to such individual under subsection (b) or (c),
> the Secretary may relieve such individual of such liability.

The Parkers point to I.C. § 63-3002 to support their claim that the above provisions should be read into Idaho law and applied in this case in order to afford them relief.

Idaho Code § 63-3002 states:

> It is the intent of the legislature by the adoption of this act, insofar as possible to make the provisions of the Idaho act identical to the provisions of the Federal Internal Revenue Code relating to the measurement of taxable income, to the end that the taxable income reported each taxable year by a taxpayer to the internal revenue service shall be the identical sum reported to this state, subject only to modifications contained in the Idaho law; to achieve this result by the application of the various provisions of the Federal Internal Revenue Code relating to the definition of income, exceptions therefrom, deductions (personal and otherwise), accounting methods, taxation of trusts, estates, partnerships and corporations, basis and other pertinent provisions to gross income as defined therein, resulting in an amount called "taxable income" in the Internal Revenue Code, and then to impose the provisions of this act thereon to derive a sum called "Idaho taxable income"; to impose a tax on residents of this state measured by Idaho taxable income wherever derived and on the Idaho taxable income of nonresidents which is the result of activity within or derived from sources within this state. All of the foregoing is subject to modifications in Idaho law including, without limitation, modifications applicable to unitary groups of corporations, which include corporations incorporated outside the United States.

This statute says nothing about the application of federal provisions for equitable relief. Further, we have made clear that the statute "does not incorporate by reference all provisions of the federal Internal Revenue Code into Idaho tax law." *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 796, 134 P.3d 641, 647 (2006). Instead, as the district court properly observed, this Court has relied upon I.C. § 63-3002 to adopt federal tax provisions where Idaho law is silent, but has declined to adopt the federal tax code when it conflicts with Idaho law. *See*, *e.g.*, *Idaho State Tax Comm'n v. Hautzinger*, 137 Idaho 401, 403, 49 P.3d 406, 408 (2002) (adopting federal elements of tax fraud because Idaho law did not provide those elements); *Lockheed*, 142 Idaho at 797, 134 P.3d at 648 (declining to adopt federal requirement that

taxpayers receiving payments under long term contracts report property under construction in computing income because under I.C. § 63-3027 property under construction is excluded). Idaho law does have its own provisions for equitable relief: I.C. §§ 63-3047 and 63-3048. The district court declined to read the above federal provisions into Idaho law because it found that I.C. §§ 63-3047 and 63-3048 conflict with those provisions for the reason that, while not explicitly aimed at offering equitable relief to a non-resident facing taxation due to operation of Idaho community property law, they do "provide for a method by which the taxpayer and the Commission may compromise a dispute."

More than conflicting with the Idaho Code, the federal provisions urged by the Parkers do not apply to the Parkers' situation. The federal provisions are designed to offer an individual spouse equitable relief from tax liability attributable to the other spouse. That is, as between spouses, these regulations permit the Internal Revenue Service to allocate responsibility for payment of federal taxes. *Christensen v. C.I.R.*, 523 F.3d 957, 960 (9th Cir. 2008) ("The Commissioner has the authority to relieve one spouse from tax liability attributable to the other. *See, e.g.,* [26 U.S.C.] §§ 66(c), 6015(b), (c), (f).") Rev. Proc. 2003-61, 2003 I.R.B. 296 § 4.02(1)(b) ("[T]he Service ordinarily will grant equitable relief under section 6015(f) … [if] the requesting spouse had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability.") If one spouse is granted equitable relief, the other spouse is liable; the amount to which the federal treasury is entitled is not reduced. In this case, the Parkers ask us to grant Kathy relief from tax liability on one-half of David's Nevada earnings and attribute that liability to David instead. If the Court were to do this, however, unlike under the federal scheme, the State would lose out on that revenue altogether, since David is a Nevada resident and any state tax liability on his Nevada-sourced income would be owed to Nevada.[4]

Furthermore, 26 U.S.C. § 66(c) allows income attributable to one spouse to be attributed to the other spouse if the first spouse "does not file a joint return for any taxable year." *Christensen*, 523 F.3d at 962 ("Taken together, the similar and separate equitable provisions indicate that Congress intended spouses facing joint liability from community property laws to seek equitable relief under § 66(c) and spouses facing joint liability from joint tax returns to seek equitable relief under § 6015(f).") Kathy would be ineligible for relief under § 66(c) because she and David filed joint returns for the relevant years. Kathy has further failed to establish "that . . .

_____

[4] The parties have stipulated that Nevada does not impose an income tax.

she did not know of, and had no reason to know of" the fact that David was earning income in Nevada. Again, for this reason she would not be eligible for relief under § 66(c). *Hardy v. C.I.R.*, 181 F.3d 1002, 1007-08 (1999) ("Because Hardy was aware that Mr. Hardy was employed and earning income, she had reason to know of the taxable income. . . . Thus, the Tax Court properly concluded that she did not qualify for innocent spouse treatment under § 66(c).")

Idaho Code § 63-3002 does not explicitly state that the State should adopt federal provisions for equitable relief from tax liability. That statute has been read as not requiring adoption of every federal tax procedure, and this Court has declined to adopt federal procedures when those procedures conflict with prescriptions in Idaho law. Idaho Code §§ 63-3047 and 63-3048 provide a mechanism by which the Commission can grant equitable relief, and thus we decline to read federal provisions as preempting them, in particular when those provisions are not applicable to the case at hand. Based on the foregoing, we affirm the district court's decision not to adopt the federal provisions urged by the Parkers.

**E. We award the Commission attorney fees on appeal.**

It should first be noted that although the Commission does not specify whether it seeks attorney fees for the proceedings below as well as on appeal, there is no indication that it raised any request for attorney fees with the district court. Thus, we only consider whether to award attorney fees on appeal. The Commission asks for an award of attorney fees pursuant to I.C. § 63-3049, which states in relevant part that:

> (a) Redetermination by the state tax commission may be reviewed in the district court for Ada county or the county in which the taxpayer resides or has his principal office or place of business by a complaint filed by the taxpayer against the state tax commission . . . .
> . . . .
> (d) Whenever it appears to the court that:
> (1) Proceedings before it have been instituted or maintained by a party primarily for delay; or
> (2) A party's position in such proceeding is frivolous or groundless; or
> (3) A party unreasonably failed to pursue available administrative remedies;
> the court, in its discretion, may require the party which did not prevail to pay to the prevailing party costs, expenses and attorney's fees.

The Commission argues that not only is the holding in *Herndon v. West*, 87 Idaho at 340, 393 P.2d at 40, (that the State may tax the income of a resident regardless of where it derives from) well-settled law, the Parkers failed to disclose the case in their opening brief, thereby taking a frivolous position.

We agree. Despite the fact that *Herndon* is dispositive of the due process issue in this case, the Parkers fail to address it in their opening brief other than to mention that the district court relied on it in making its decision. Additionally, the Parkers urged this Court to consider an issue raised for the first time on appeal, despite long-standing precedent that we will not do so. Finally, the Parkers urged a violation of the Commerce Clause without showing how it applies to this case. Therefore, pursuant to I.C. § 63-3049(d)(2), we award the Commission attorney fees on appeal.

## IV. CONCLUSION

We decline to consider whether the district court erred in applying Idaho community property law. We affirm the district court's decision that taxing Kathy's income does not violate due process; decline to address whether the court erred in refusing to strike portions of Gunter's affidavit; affirm the district court's conclusion that the Commerce Clause is not violated in this case; and affirm the court's decision not to read federal equitable relief provisions into Idaho law. Attorney fees and costs on appeal to the Commission.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.