IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38756

| | | |
|---|---|---|
| PHILIP L. HART, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Boise, April 2012 Term |
| | ) | |
| v. | ) | 2012 Opinion No. 70 |
| | ) | |
| IDAHO STATE TAX COMMISSION and | ) | Filed: April 26, 2012 |
| IDAHO BOARD OF TAX APPEALS, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| Respondents. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

The decision of the district court is affirmed.

Starr Kelso, Coeur d'Alene, argued for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondents. William A. Von Tagen argued.

_____

J. JONES, Justice.

This case involves Philip L. Hart's appeal of an Idaho Board of Tax Appeals (BTA) decision. Hart appealed two State Tax Commission Notice of Deficiency determinations to the BTA. The BTA found Hart's appeal untimely and therefore dismissed it. Hart appealed to the district court, which likewise found his BTA appeal untimely and dismissed for lack of jurisdiction. We affirm the district court.

## I.
## BACKGROUND

The State Tax Commission (Commission) issued Hart two Notice of Deficiency (NOD) determinations on September 4, 2008. One NOD covered tax years 1996 through 1998 and the other was for 1999 through 2004. The Commission issued separate NODs because Hart paid no income taxes for the years 1996 through 1998. He apparently paid some taxes, but less than he

1

owed, for 1999 through 2004. Hart protested the NODs and requested that the Commission make a redetermination, contending he had no outstanding tax liability. Hart also requested an informal hearing before the Commission, which he delayed until July 2009. After the hearing, and after Hart's further delay and failure to provide additional relevant information in support of his protest, the Commission issued a decision on September 30, 2009, affirming and finalizing the NODs. Hart acknowledged receiving the Commission's final decision on October 2, 2009. The Commission's final decision indicated that Hart owed $53,523 for unpaid taxes, penalties, and interest for tax years 1996 through 2004. On December 31, 2009, Hart wrote the Commission, stating that he intended to appeal the NODs after the Idaho Legislature's 2010 session. Hart is a member of the Idaho State Legislature and he asserted that he therefore had a right to defer his appeal.

On March 30, 2010, Hart sent a letter to the BTA entitled "Notice of Appeal to the Board of Tax Appeals." Included with that letter were two checks, totaling $9,462.04, which Hart tendered as a portion of the cash bond necessary for his BTA appeal. Hart recognized, however, that his outstanding tax liability, as specified in the NODs, required a bond greater than he submitted. Hart thus asked the BTA to "consider [his] letter [a] promise to pay the remaining [amount]." Hart's March 30 letter did not include any specific objections to the Commission's findings, but it did state that he would submit arguments in a subsequent filing. On March 31, 2010, Hart sent another letter to the BTA entitled "Notice of Appeal to the Idaho Board of Tax Appeals." That letter included Hart's objections to the NODs. The BTA, upon motion from the Commission, determined it lacked jurisdiction because it found Hart's appeal untimely. The BTA denied Hart's motion for reconsideration of the dismissal on September 24, 2010.

On October 22, 2010, Hart filed an appeal of the BTA decision. The district court, upon motion by the Commission, likewise determined it lacked jurisdiction, finding Hart's BTA appeal untimely. Hart filed a motion for reconsideration, which the court denied. Hart then filed this appeal and asks this Court to determine whether the district court erred in dismissing his petition for lack of jurisdiction. He also contends the district court erred when it denied his motion to reschedule a hearing on his motion to reconsider.

2

## II.
## ANALYSIS

**A.      The district court lacked jurisdiction to consider Hart's petition.**

On appeal, Hart contends that the district court employed an improper analysis to determine it lacked jurisdiction. The Commission and BTA respond that, regardless of how the court articulated the standard it used, the court had broad authority to determine whether it had jurisdiction.

In every appeal, this Court must satisfy itself that the district court had jurisdiction. *See State v. Johnson*, 152 Idaho 41, 47, 266 P.3d 1146, 1152 (2011). The Court is free to consider the question of subject matter jurisdiction even if the district court employed an improper analysis, or no analysis, on the issue. *See id.* Before a district court may exercise judicial review of an agency decision, there must be a statute granting a right of review. *See In re City of Shelley,* 151 Idaho 289, 292, 255 P.3d 1175, 1178 (2011). Idaho Code § 63-3812(a) provides taxpayers aggrieved by a BTA decision the right to petition the district court for review, in accordance with I.R.C.P. 84. However, "[p]ursuit of statutory administrative remedies is a condition precedent to judicial review." *Park v. Banbury*, 143 Idaho 576, 578, 149 P.3d 851, 853 (2006). A party seeking judicial review must "run the full gamut of administrative proceedings before an application for judicial relief may be considered." *Id.* (internal quotation marks omitted). To fully avail oneself of administrative proceedings, one must necessarily timely file and perfect his or her appeal. A taxpayer may appeal decisions of the Commission by filing an appeal from an NOD with the BTA within ninety-one days after receiving the NOD.[1] I.C. § 63-3049(a). If the BTA had no opportunity to review the taxpayer's appeal, there is no administrative decision for the district court to review and that court lacks jurisdiction.

Here, Hart acknowledged receipt of the Commission's decision affirming and finalizing the NODs on October 2, 2009. Hart had until January 1, 2010—ninety-one days after receiving the Commission's final decision—to file his appeal with the BTA. Because January 1 was a holiday, and the next two days were weekend days, the BTA determined the appeal deadline to be Monday, January 4, 2010. It is undisputed that Hart sent his first "Notice of Appeal to the

---

[1] Alternatively, a taxpayer may seek judicial review of the Commission's redetermination decisions directly and thus bypass the BTA entirely. I.C. § 63-3049(a). But the same ninety-one day time limitation applies to petitions for review in district court as for appeals to the BTA. I.C. § 63-3049(a).

Board of Tax Appeals" on March 30, 2010, nearly three months late. In the BTA, Hart asserted that his untimely filing was excused because Article III, § 7 of the Idaho Constitution tolled the statutory ninety-one day time limit as to him. According to Hart, legislative immunity saved him from having to file an appeal during the legislative session and the ten days just before the session. The 2010 Session began on January 11. So, Hart argued that January 4—the apparent deadline for his appeal—fell within the timeframe contemplated by Article III, § 7.

As the district court recognized, the BTA accepted Hart's argument *arguendo* but nonetheless found his filing untimely because his March 2010 "Notices of Appeal" failed to comply with the BTA's rules for appeals. The district court likewise assumed that, even if Hart's time for filing was tolled during the legislative session, he still filed his "Notices of Appeal" late. That approach is understandable, since this Court has yet to address the merits of a legislative immunity argument like Hart's. But administrative agencies are tribunals of limited jurisdiction, which depends entirely upon compliance with their statutory grant of power. *Washington Water Power Co. v. Kootenai Envtl. Alliance*, 99 Idaho 875, 879, 591 P.2d 122, 126 (1979). The BTA was not authorized to assume jurisdiction if not statutorily provided for. In other words, if Hart's appeal should have been filed on January 4, 2010, the BTA was without jurisdiction to consider any of Hart's filings after that. It is therefore necessary to determine whether Hart's legislative immunity argument has merit.

Article III, § 7 of the Idaho Constitution privileges Idaho's legislators from arrest and from liability to civil process during the legislative session. Specifically, Section 7 provides:

> Senators and representatives in all cases, except for treason, felony, or breach of the peace, shall be privileged from arrest during the session of the legislature, and in going to and returning from the same, and shall not be liable to any civil process during the session of the legislature, nor during the ten days next before the commencement thereof . . . .

Idaho Const. art. III, § 7.

Hart contends, the word "process," as used in Section 7, means "proceeding." At oral argument, Hart's counsel characterized appeals from adverse rulings as legal proceedings subject to Section 7's privilege. According to Hart, a legislator is privileged from conforming to the typical time limits for appeals while the Legislature is in session, and the ten days before the legislative session. Hart conceded that Section 7 cannot toll statutes of limitation for a legislator to file a new lawsuit, which he characterized as affirmative legal proceedings. He was, however,

4

unable to articulate a meaningful distinction between affirmative legal proceedings, like a new law suit, and permissive appeals, like this case involves.

Hart's untenable argument flows from his misunderstanding of the word "process." In the legal context, "process" does not mean "proceeding." "Strictly speaking, [']process,' as its etymology shows, is something issuing out of, or from a court or judge . . . ." *People v. Nash*, 1 Idaho 206, 210, 1868 WL 1944 (Idaho Terr. 1868). *See also* Black's Law Dictionary 1325 (9th ed. 2009) (defining "process" as "[a] summons or writ, esp. to appear or respond in court"); Webster's II New College Dictionary 881–82 (1999) (defining "process," when used in the legal context, as "[a] summons or writ ordering a defendant to appear in court"). Idaho courts have broad authority to compel appearance before them, and to compel obedience to their orders and "process." *See* I.C. § 1-1603 (articulating the powers of every court in the state to enforce their authority); *Marks v. Vehlow*, 105 Idaho 560, 566, 671 P.2d 473, 479 (1983) (discussing the authority of courts to compel compliance with their orders); *Camp v. E. Fork Ditch Co., Ltd.*, 137 Idaho 850, 865, 55 P.3d 304, 319 (2002) (same). *See also* I.C. § 8-201 *et seq.* (describing procedures for "Discharge of Persons Imprisoned on *Civil Process*" (emphasis added)). Court powers include, for example, the authority to jail people for "civil contempt." I.C. § 7-611; *Camp*, 137 Idaho at 865, 55 P.3d at 319. "Process" also connotes the State's authority to compel compliance with the law. In *Nash*, the Territorial Supreme Court explained that "process," as used in a criminal statute at issue there, referred to the sheriff's official authority to carry out the law. 1 Idaho at 209, 1868 WL 1944.

At the time Article III, § 7 was being considered and adopted at the constitutional convention, there were a number of territorial statutes providing for arrest in civil actions, as well as the discharge of those arrestees from jail. CCP 1881, §§ 270−296, 783−794. Those provisions are currently codified in Chapters 1 and 2, Title 8, Idaho Code. While the Court certainly does not vouch for the continuing viability of any of the statutes, they are instructive as to the meaning of "civil process" at the time of the constitutional convention. Idaho Code § 8-102 provides for the arrest of defendants in specified civil action settings. Chapter 2 is entitled "Discharge of Persons Imprisoned on Civil Process." The code sections in Chapter 2 specify how a "person confined in jail on an execution issued on a judgment rendered in a civil action" may be discharged. I.C. § 8-201. Thus, it is clear that "civil process," as used in Section 7, involves an element of compulsion, similar to arrest in a criminal proceeding. There is no indication

5

whatsoever that civil process contemplates a person taking an action to avail himself of benefits available through the judicial process, such as filing a lawsuit, filing an appeal of an adverse decision, and the like.

Section 7 speaks of privilege from liability to civil process, not privilege from conformance with the rules governing permissive actions. Idaho Const. art. III, § 7 ("Senators and representatives . . . shall not be *liable* to any civil process." (emphasis added)). "Liable" means being responsible or answerable in law; legally obligated. Black's Law Dictionary 998 (9th ed. 2009); Webster's II New College Dictionary 631 (1999). Thus, Section 7 only privileges legislators from the legal obligation to answer to the government's broad authority to compel compliance with its civil laws. This interpretation makes sense because Section 7 also speaks of privilege from arrest for all but egregious criminal offenses—treason, felony, and breach of peace. In sum, Article III, § 7 privileges legislators from unnecessary compulsion by the other branches of government, which may interfere with official legislative duties.

In this case, Hart was not obligated to do anything but pay his taxes. Neither the BTA, nor any other government official, tried to compel Hart's appearance before a tribunal. No court sought to hold Hart responsible for a new legal obligation. No sheriff or other agent of the State sought to arrest Hart or compel him to appear anywhere or take any other action. In other words, no one tried to hold Hart liable to civil process. Rather, Hart sought to avail himself of BTA appeals procedures, which he had until January 4, 2010 to do. He missed that deadline by almost three months. In this instance, Hart is just a taxpayer, with no greater privilege than his constituents. Because Hart failed to timely file his BTA appeal, he failed to exhaust his administrative remedies. Consequently, neither the BTA nor the district court had jurisdiction to consider any of his arguments about the legality or appropriateness of Idaho's tax system. The district court assumed away a necessary threshold issue, but that court reached the right result. We therefore affirm the district court's dismissal of Hart's petition for want of jurisdiction.

**B.      The district court did not err by denying Hart's motion to reschedule an oral argument.**

Hart argues that the district court erred by failing to reschedule an oral argument on a motion to reconsider. Hart contends that due process somehow entitles him to be physically present at any hearing and to assist his lawyer give oral argument; and he asserts a right to unilaterally reschedule hearings to accommodate his calendar. Because the district court lacked

6

jurisdiction to consider Hart's petition, we need not reach this issue. Furthermore, we will not entertain an issue that is "not supported by any cogent argument or authority." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). Hart's argument on this issue is devoid of reasoned analysis or relevant authority.

### C. The Commission and the BTA are entitled to fees on appeal.

All parties request fees on appeal. Hart, as the losing party, is not entitled to fees. The Commission and the BTA seek fees under I.C. § 63-3049(d). Section 63-3049(d) provides:

> Whenever it appears to the court that . . . [a] party's position in [a] proceeding [for judicial review of the Commission] is frivolous or groundless[,] the court, in its discretion, may require the party which did not prevail to pay the prevailing party costs, expenses and attorney's fees.

I.C. § 63-3049(d). *See also Parker v. Idaho State Tax Comm'n*, 148 Idaho 842, 850, 230 P.3d 734, 742 (2010) (awarding attorney fees on appeal under I.C. § 63-3049(d)). Hart's position here is groundless. Hart's theory of legislative immunity was based on an untenable reading of Article III, § 7 of the Idaho Constitution. None of this Court's decisions support his assertion that he had more than ninety-one days to file a BTA appeal, nor did Hart offer any reasoned basis for us to blaze a new trail in the law. Accordingly, we award costs and fees to the Commission and the BTA.

## III.
## CONCLUSION

The decision of the district court dismissing Hart's petition is affirmed. We award costs and fees on appeal to the respondents.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.