**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 44378**

| | |
|---|---|
| LINDA DUNN, individually, and as surviving spouse of BARRY DUNN, deceased,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>IDAHO STATE TAX COMMISSION,<br><br>    Defendant-Respondent.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| | Boise, August 2017 Term<br><br>2017 Opinion No. 106<br><br>Filed: September 25, 2017<br><br>Karel A. Lehrman, Clerk |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County.  Hon. Cynthia K.C. Meyer, District Judge.

The judgment of the District Court is <u>affirmed</u>.  Costs on appeal are <u>awarded</u> to respondent.

Richard Kochansky, Coeur d'Alene, attorney for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, attorney for respondent. David B. Young argued.

_____

JONES, Justice

## I. NATURE OF THE CASE

Linda Dunn ("Linda") appeals from a district court's judgment affirming the Idaho State Tax Commission's (the "Commission") deficiency determination. The Commission issued a deficiency against Linda after determining that her one-half community interest in her husband's, Barry Dunn ("Husband"), out-of-state earnings should have been included as Idaho taxable income for 2000–01, 2003–05, and 2007–10 (the "Taxable Years").

## II. FACTUAL AND PROCEDURAL BACKGROUND

1

The crux of this appeal concerns the proper tax treatment of Linda's one-half community interest in Husband's out-of-state earnings. The facts are uncontested. Linda was married to Husband during the Taxable Years. During the Taxable Years, Husband lived primarily in Texas and was employed by a Texas offshore drilling company. All of the earnings at issue were earned by Husband personally as a wage earner in Texas, Alaska, or Washington and were directly deposited into his bank account in Tomball, Texas. Husband never worked or was domiciled in Idaho during the Taxable Years. Throughout the Taxable Years, Linda temporarily lived with Husband at his work location, but always returned to Idaho to operate a horse farm. She was a resident of Idaho for all of the Taxable Years. Linda and Husband's tax filing status was "married filing jointly."

On April 13, 2012, the Commission issued a Notice of Deficiency Determination. The Commission's deficiency was only addressed to income attributed to Linda. Linda appealed the decision to the Idaho Board of Tax Appeals, and the Board affirmed the Commission's decision. On May 11, 2015, Linda petitioned a district court for review of the Commission's decision.

On June 8, 2016, the district court issued a memorandum decision and order affirming the Commission's decision wherein it held that: (1) Linda owned a one-half undivided interest in the Texas earnings of Husband, and, because she was domiciled in Idaho at the time she acquired the interest in Husband's wages, her interest was subject to the tax laws of Idaho; (2) Linda owned a vested interest in the community property wages earned by Husband in Washington, which were subject to taxation under the laws of Idaho as the domicile of Linda; and (3) Idaho's personal income tax scheme did not violate the dormant Commerce Clause or the Privileges and Immunities Clause of the United States Constitution because Linda failed to show a substantial effect on an identifiable interstate economic activity or market. The district court denied the Commission's request for costs and attorney fees because, although Linda's argument was ultimately failing, it was not devoid of merit. A corresponding judgment was issued on August 3, 2016.

Linda appeals.

### III. ISSUES ON APPEAL

1. Did the district court err by holding that there were no constitutional violations?
2. Did the district court err by holding that Linda's one-half community interest in Husband's wages was subject to the tax laws of Idaho?

2

## IV. STANDARD OF REVIEW

A taxpayer may appeal a determination by the Commission by filing a complaint against the Commission in district court. I.C. § 63–3049. The case is to proceed as a *de novo* bench trial. I.C. § 63–3049; *cf.* I.C. § 63–3812(c). A deficiency determination issued by the Commission is presumed to be correct, and the burden is on the taxpayer to show that the Commission's decision is erroneous. *Albertson's Inc. v. State Dep't of Revenue*, 106 Idaho 810, 814, 683 P.2d 846, 850 (1984).

*Parker v. Idaho State Tax Comm'n*, 148 Idaho 842, 845, 230 P.3d 734, 737 (2010) (footnote omitted).

"Because constitutional questions are purely questions of law, they are . . . reviewed *de novo*." *V-1 Oil Co. v. Idaho State Tax Com'n*, 134 Idaho 716, 718, 9 P.3d 519, 521 (2000) (citing *Idaho State Ins. Fund v. Van Tine*, 132 Idaho 902, 905–906, 980 P.2d 566, 569–570 (1999)).

## V. ANALYSIS

Throughout her briefing, Linda focuses solely on Husband's Texas earnings and Texas law. She does not proffer an argument related to Husband's Washington earnings or Washington law. "We will not consider an issue not 'supported by argument and authority in the opening brief.'" *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (quoting *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008)). Accordingly, we only consider Linda's appeal as it relates to her one-half community interest in Husband's Texas earnings.

### A.     The district court correctly held that there were no constitutional violations.

First, Linda argues that the United States Supreme Court's decision in *Comptroller of Treasury of Maryland v. Wynne*, 135 S.Ct. 1787 (2015) "abrogated *Parker* [*v. Idaho State Tax Comm'n*, 148 Idaho 842, 847, 230 P.3d 734, 739 (2010)] and applied the [d]ormant Commerce Clause to state cross-border income tax cases." Linda claims that the tax at issue here "flunks the internal consistency test" from *Wynne* because "Idaho is taxing [Husband's] wages earned in Texas where there is no state income tax." Further, Linda claims that Idaho's income tax "is inherently discriminatory and acts as a tariff" because her one-half interest in Husband's Texas earnings would be tax-exempt if she lived in Texas.

Second, Linda argues that the Privileges and Immunities Clause of the United States Constitution applies. She cites *Lunding v. New York Tax Appeals Tribunal*, 522 U.S. 287 (1998),

and claims that it stands for the proposition that unequal income tax treatment of a nonresident violates the Privileges and Immunities Clause.

The Commission's position—that the district court was correct in holding that there were no constitutional violations—can be distilled to two main points. First, the Commission asserts that the Commerce Clause is not implicated by the facts of this case. The Commission contends that, to implicate the Commerce Clause, Linda must show that the application of Idaho's tax scheme substantially affected interstate commerce. The Commission asserts that Linda failed to do so. Further, the Commission claims that *Wynne* does not render Idaho's personal income tax scheme unconstitutional as Linda claims. The Commission claims that the internal consistency test from *Wynne* does not require each state to adopt identical tax provisions; rather, it asks, if every state used the same tax scheme, would interstate commerce be at a disadvantage as compared to intrastate commerce? *Wynne*, 135 S.Ct. at 1802. If the answer is no, then the tax scheme under scrutiny passes the test. The Commission concludes that Linda has failed to demonstrate that she was entitled to a credit for taxes paid to another state.

Second, the Commission argues that there is no violation of the Privileges and Immunities Clause. The Commission states that, in tax cases, the Privileges and Immunities Clause stands for the proposition that a state must offer "substantial equality of treatment" as between its citizens and a nonresident taxpayer. *Austin v. New Hampshire*, 420 U.S. 656 (1975). Here, the Commission argues, there can be no violation of the Privileges and Immunities Clause because Linda has not shown disparate treatment between a nonresident and a resident. The Commission distinguishes *Lunding*, arguing that in that case, the United States Supreme Court invalidated a state tax that expressly discriminated against nonresidents. Conversely, here, the Commission argues, there was no showing of discriminatory tax treatment of residents relative to nonresidents. Lastly, the Commission explains that Husband is not the target of the tax; therefore, there is no occasion of Husband having to pay tax in Idaho greater than what he paid in another state.

> To show that the Commerce Clause is implicated by a tax statute, [a taxpayer] must demonstrate that the state's taxation of [her] entire income has a substantial effect on an identifiable interstate economic activity or market." 71 Am.Jur.2d State and Local Taxation § 391 (2009) (citing *Stelzner v. Comm'r of Revenue*, 621 N.W.2d 736, 740 (Minn.2001)).

> "The dormant Commerce Clause protects markets and participants in markets, not taxpayers as such." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 300 [117 S.Ct. 811, 825, 136 L.Ed.2d 761, 781] (1997). Therefore, the dormant Commerce Clause will not apply unless there is actual or prospective competition between entities in an identifiable market and state action that either expressly discriminates against or places an undue burden on interstate commerce. *Tracy*, 519 U.S. at 300 [117 S.Ct. at 825, 136 L.Ed.2d at 780–81]. Furthermore, this impact must be more than merely incidental. *United States v. Lopez*, 514 U.S. 549, 559 [115 S.Ct. 1624, 1630, 131 L.Ed.2d 626, 637–38] (1995).

*Parker v. Idaho State Tax Comm'n*, 148 Idaho 842, 847, 230 P.3d 734, 739 (2010) (quoting *Stelzner v. Comm'r of Revenue*, 621 N.W.2d 736, 740–41 (2001)).

The facts in *Parker* are remarkably similar to the facts in this case. 148 Idaho 842, 230 P.3d 734. Mrs. Parker was domiciled in Idaho, and her husband was domiciled in Nevada. *Id.* at 844, 230 P.3d at 736. The Commission conducted an audit and determined that one-half of the income earned by Mr. Parker in Nevada was subject to Idaho income tax because Mrs. Parker owned a one-half community interest in the Nevada income. *Id.* The Parkers appealed the Commission's decision arguing, *inter alia*, that taxing one half of Mr. Parker's Nevada earnings violated the Commerce Clause. *Id.* This Court held that the Commerce Clause was not implicated because the Parkers did not identify an interstate economic market or activity that was burdened by the taxation of Mrs. Parker's one-half community interest in Mr. Parker's Nevada income. *Id.* at 847, 230 P.3d at 739.

In *Wynne*, the United States Supreme Court analyzed the constitutionality of Maryland's income tax scheme. 135 S.Ct. 1787 (2015). The specific tax scheme at issue discriminated in favor of intrastate over interstate economic activity. *Id.* at 1796. Residents were subject to a two-part income tax: (1) a "state" income tax; and (2) a "county" income tax. *Id.* at 1790. Despite the misleading name, the "county" tax was collected by the state. Residents who paid income tax to another jurisdiction for income earned in that jurisdiction were allowed a credit against the "state" tax, but not the "county" tax. *Id.* Thus, part of the income that a resident earned outside of Maryland could be taxed twice.

The Wynnes were Maryland residents and earned pass-through income from a Subchapter S corporation that earned income in 39 States. *Id.* The Wynnes claimed an income tax credit for taxes paid to the other 39 States. *Id.* The Maryland State Comptroller of the

Treasury allowed the Wynnes a credit against their "state" income tax, but not against their "county" income tax. *Id.* A deficiency was assessed. *Id.*

The United States Supreme Court noted that three of its previous decisions were particularly instructive: *J.D. Adams Manufacturing Co. v. Storen*, 304 U.S. 307 (1938); *Gwin, White & Prince, Inc. v. Henneford*, 305 U.S. 434 (1939); and *Central Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653 (1948). *Id.* at 1795. In all three of these cases, the United States Supreme Court "struck down a state tax scheme that might have resulted in the double taxation of income earned out of the State and that discriminated in favor of intrastate over interstate economic activity." *Id.* Although, the Court reasoned that the tax schemes in the aforementioned three cases "could be cured by taxes that satisfy what we have subsequently labeled the 'internal consistency' test," which "helps courts identify tax schemes that discriminate against interstate commerce [by] 'look[ing] to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate.'" *Id.* The United States Supreme Court explained the benefit of the test as follows:

> By hypothetically assuming that every State has the same tax structure, the internal consistency test allows courts to isolate the effect of a defendant State's tax scheme. This is a virtue of the test because it allows courts to distinguish between (1) tax schemes that inherently discriminate against interstate commerce without regard to the tax policies of other States, and (2) tax schemes that create disparate incentives to engage in interstate commerce (and sometimes result in double taxation) only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes. . . . The first category of taxes is typically unconstitutional; the second is not.

*Id.*

The United States Supreme Court held that Maryland's income tax scheme failed the internal consistency test and provided the following example to illustrate its reasoning:

> Assume that every State imposed the following taxes, which are similar to Maryland's "county" and "special nonresident" taxes: (1) a 1.25% tax on income that residents earn in State, (2) a 1.25% tax on income that residents earn in other jurisdictions, and (3) a 1.25% tax on income that nonresidents earn in State. Assume further that two taxpayers, April and Bob, both live in State A, but that April earns her income in State A whereas Bob earns his income in State B. In this circumstance, Bob will pay more income tax than April solely because he earns income interstate. Specifically, April will have to pay a 1.25% tax only

once, to State A. But Bob will have to pay a 1.25% tax twice: once to State A, where he resides, and once to State B, where he earns the income.

*Id.* at 1803–04. The United States Supreme Court emphasized that this illustration demonstrated that "Maryland scheme's discriminatory treatment of interstate commerce is not simply the result of its interaction with the taxing schemes of other States. Instead . . . Maryland's tax scheme is inherently discriminatory and operates as a tariff." *Id.* at 1804. The United States Supreme Court reasoned, however, that

> Maryland could remedy the infirmity in its tax scheme by offering, as most States do, a credit against income taxes paid to other States. . . . If it did, Maryland's tax scheme would survive the internal consistency test and would not be inherently discriminatory. Tweak our first hypothetical . . . and assume that all States impose a 1.25% tax on all three categories of income but also allow a credit against income taxes that residents pay to other jurisdictions. In that circumstance, April (who lives and works in State A) and Bob (who lives in State A but works in State B) would pay the same tax. Specifically, April would pay a 1.25% tax only once (to State A), and Bob would pay a 1.25% tax only once (to State B, because State A would give him a credit against the tax he paid to State B).

*Id.* at 1805–06.

Turning to the Privileges and Immunities Clause,

> The Privileges and Immunities Clause of Art. IV, § 2, cl. 1, provides: 'The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.' The Clause thus establishes a norm of comity without specifying the particular subjects as to which citizens of one State coming within the jurisdiction of another are guaranteed equality of treatment.

*Austin v. New Hampshire*, 420 U.S. 656, 660 (1975). In *Lunding v. New York Tax Appeals Tribunal*, 522 U.S. 287 (1998), the United States Supreme Court analyzed the constitutionality of a New York tax law that denied only nonresident taxpayers a deduction to their state income tax for alimony paid. The United States Supreme Court held that, "in the absence of a substantial reason for the difference in treatment of nonresidents, [the tax law at issue] violates the Privileges and Immunities Clause by denying only nonresidents an income tax deduction for alimony payments." *Id.* at 296.

Linda's argument regarding the dormant Commerce Clause is meritless for two reasons. First, much like the appellants in *Parker*, Linda fails to identify any interstate economic activity or market that is burdened by the taxation of her one-half community interest in Husband's Texas earnings.

Second, Idaho's income tax scheme does not, as Linda claims "flunk[] the internal consistency test." Linda asserts that there is no internal consistency because "Idaho seeks an income tax on Linda's presumed community half that would not be taxed in Texas." Linda clearly misunderstands the internal consistency test. The United States Supreme Court explained that the internal consistency test "isolate[s] the effect of a defendant State's tax scheme." *Wynne*, 135 S.Ct. 1787, 1802 (2015). Therefore, for purposes of the internal consistency test, whether or not Texas would tax Linda's one-half community interest in Husband's earnings is irrelevant. Indeed, comparing Texas and Idaho tax law merely demonstrates that the differences "create disparate incentives to engage in interstate commerce (and sometimes result in double taxation) only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes." *Id.* at 1802. The United States Supreme Court held that such a result is not unconstitutional. *Id.*

To apply the internal consistency test, we must first examine Idaho's tax statutes. Idaho taxes its residents on income, "wherever derived," and taxes nonresidents on income "which is the result of activity within or derived from sources within the state." I.C. § 63-3002. However, Idaho grants residents "a credit against the tax otherwise due under this chapter for the amount of any income tax imposed on the individual . . . by another state on income derived from sources therein while domiciled in Idaho and that is also subject to tax under this chapter." I.C. § 63-3029(1). Idaho's tax scheme is not inherently discriminatory because, if adopted by every state, interstate commerce would not be at a disadvantage as compared to intrastate commerce. As acknowledged by the United States Supreme Court in *Wynne*, a tax credit may cure an otherwise discriminatory tax scheme. 135 S.Ct. at 1805–06. Accordingly, Linda's argument—that Idaho's tax scheme fails the internal consistency test—is meritless.

Separately, Linda's claim that "*Parker* . . . is obsolete since the 2015 case of *Wynne*" is incorrect. *Parker*'s analysis of the dormant Commerce Clause is straight forward. *Parker*, 148 Idaho 842, 847–48, 230 P.3d 734, 739–40 (2010). This Court began by stating that, for a tax statute to implicate the Commerce Clause, a taxpayer "must demonstrate that the state's taxation of [her] entire income has a substantial effect on an identifiable interstate economic activity or market." *Id.* at 847, 230 P.3d at 739 (quoting 71 Am.Jur.2d State and Local Taxation § 391 (2009)). This Court continued, stating that "the dormant Commerce Clause will not apply unless there is actual . . . competition between entities in an identifiable market and *state action that*

8

*either expressly discriminates against or places an undue burden on interstate commerce.*" *Id.* (quoting *Stelzner v. Comm'r of Revenue*, 621 N.W.2d 736, 740–41 (2001)) (emphasis added). Because the Parkers did not identify any interstate economic activity or market that was burdened by Idaho's tax scheme, the Commerce Clause was not implicated. *Id.* at 847–48, 230 P.3d at 739–40. *Wynne* does not cut against *Parker*; rather, *Wynne* endorsed the internal consistency test as a method of identifying discriminatory tax schemes. The *Wynne* Court's endorsement of the internal consistency test does not do away with the other showings necessary to implicate the Commerce Clause, *i.e.*, "a substantial effect on an identifiable interstate economic activity or market." *Parker*, 148 Idaho 842, 847, 230 P.3d 734, 739 (2010). Therefore, *Wynne* did not abrogate *Parker*.

Lastly, the Privileges and Immunities Clause is not violated by the Commission's taxing of Linda's one-half community interest in Husband's earnings. Linda's suggestion that the holding from *Lunding v. New York Tax Appeals Tribunal* is applicable here is meritless. In *Lunding*, the United States Supreme Court analyzed a tax law that treated nonresidents differently from residents. 118 S.Ct. 766 (1998). That is not the case here. The Commission is taxing Linda, a resident of Idaho. The Commission is not seeking to tax Husband. Therefore, the Privileges and Immunities Clause is not implicated because Linda has failed to demonstrate that Idaho, without substantial reason, is taxing nonresidents differently than residents.

**B.** **The district court did not err by holding that Linda's one-half community interest in Husband's Texas earnings was subject to the tax laws of Idaho.**

Linda submits that if *Wynne* is not binding, Texas tax law applies and the community property at issue is not subject to Idaho's income tax. Linda cites *Lane-Burslem v. Commissioner of Internal Revenue*, 659 F.2d 209 (D.C. Cir. 1981), for the proposition that "the ownership interests in marital personal property should be determined by the internal law of the state with the most significant relationship to the spouses and to the earnings." Lastly, Linda argues that Texas Family Code section 3.202(b) renders her community interest in Husband's Texas earnings immune from Idaho income tax.

The Commission claims that Linda, as an Idaho resident, is taxed on all of the income she received during the Taxable Years while living in Idaho, including her one-half community interest in Husband's Texas earnings. As a preliminary matter, the Commission recognizes, in a footnote, that "[i]t is arguable that Idaho community property law (and not Texas or Washington

9

law) should have controlled whether [Husband's] income was community property." However, the Commission did not assert that position in this case because "[g]enerally, the Commission takes the position that the laws applicable to marital assets will largely be determined by the spouses' domiciles." (citing Idaho State Tax Commission Publication 175 COMMUNITY PROPERTY, https://tax.idaho.gov, Rev. Oct. 15, 2012, at 2–3). The Commission's position "mirrors the federal taxation scheme." (citing Treas. Reg. § 1.66-1 (providing that the law of the state where one is domiciled governs whether there is community income or separate income for federal tax purposes)). After conceding that Texas law applies to characterize Husband's Texas earnings, the Commission asserts that Texas law makes clear that Husband's Texas earnings are community property in which Linda owns a one-half interest.

Next, the Commission addresses Linda's reliance on Texas Family Code section 3.202(b). The Commission contends that Texas Family Code section 3.202(b) does not operate as a bar against Linda paying Idaho income tax on her one-half community interest in Husband's Texas earnings because the plain language of the statute merely prohibits a creditor from attaching sole-management community property to satisfy the other spouse's debt. The Commission asserts that the district court was correct in concluding that the Commission "is not seeking the wages of [Husband] to satisfy a debt, rather, it is assessing a tax on [Linda] for her one-half interest to income earned during marriage."

Lastly, the Commission addresses Idaho's ability to tax its own residents' income. The Commission asserts that Linda conflated the following two concepts: (1) analyzing Texas law to characterize the earnings as community or separate property; and (2) Idaho's ability to tax its own residents. The Commission explains that, by taxing its own residents' income—even income earned in Texas—Idaho is not invading Texas and seizing Husband's wages, nor is it taxing Husband. The Commission argues that the bottom line is that Idaho is taxing whatever community property interest Linda, a resident of Idaho, owns due to the wages earned by Husband. After clarifying Linda's alleged error, the Commission turns to Idaho Code section 63-3002, which provides that Idaho imposes "a tax on residents of this state measured by Idaho taxable income *wherever derived*." I.C. § 63-3002 (emphasis added). Therefore, the Commission claims that Linda, as an Idaho resident, is taxed on all the income she received during the Taxable Years while domiciled in Idaho, even if said income was derived from Texas.

10

It appears that the conflict of law analysis regarding the characterization of Husband's Texas earnings is an issue of first impression for this Court. Indeed, in *Parker*, this Court declined to address "whether the district court erred in applying Idaho rather than Nevada community property law" because the Parkers stipulated that Idaho community property laws applied. 148 Idaho 842, 846, 230 P.3d 734, 738 (2010). Similarly, here, we decline to address the issue because the Commission concedes that Texas community property law applies.

Turning to Texas community property law:

> With limited exceptions, community property under Texas law consists of all property either spouse acquired during the marriage "other than separate property." . . . Texas recognizes both sole and joint-management community property. . . . Sole-management community property is that property which, though acquired during the marriage, would have belonged to that spouse if single.

*Douglas v. Delp*, 987 S.W.2d 879, 883 (Tex. 1999).

> The characterization of property as either community or separate is determined by the inception of title to the property. . . . Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested.

*Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. Ct. App. 2004). However, there is a unique feature of Texas community property law:

> (a) During marriage, each spouse has the sole management, control, and disposition of the community property that the spouse would have owned if single, including:
>
> (1) personal earnings . . . .

Tex. Family Code § 3.102. Property that is under the sole management of one spouse is known as "special community property." While personal earnings may be controlled or managed by one spouse, this characterization does not render them immune from the non-earning spouse's community property interest. *See Massey v. Massey*, 807 S.W.2d 391, 401 (Tex. Ct. App. 1991).

Texas Family Code section 3.202(b) protects special community property from nontortious liabilities incurred by the other spouse. Tex. Fam. Code § 3.202(b). However, in *Kimsey*, the Texas Court of Appeals held that "both spouses are jointly and severally liable for the tax due on a joint return. . . . Thus, a spouse may be liable for the entire tax liability although the income was totally earned by the other spouse." *Kimsey v. Kimsey*, 965 S.W.2d 690, 696

11

(Tex. Ct. App. 1998). It stands to reason, then, that Texas Family Code section 3.202(b) does not immunize special community property from the tax liability of the non-controlling spouse.

Idaho Code section 63-3002 provides that Idaho imposes "a tax on residents of this state measured by Idaho taxable income *wherever derived . . . .*" I.C. § 63-3002 (emphasis added). Further, this Court, in *Parker*, upheld the constitutionality of Idaho's tax on residents' out-of-state income, stating:

> The Supreme Court of the United States has made it clear that a state has the power to tax in relation to a resident's income derived from sources outside the State and that there is nothing in the Federal Constitution to prevent the exercise of such power. The rationale for allowing a state to compute a tax on income earned elsewhere is based on the premise that inhabitants are supplied many services by their state of residence and should contribute toward the support of the state, no matter where their income is earned.

*Parker*, 148 Idaho 842, 846–47, 230 P.3d 734, 738–39 (2010) (citations omitted original).

The Commission correctly asserts that Linda conflates two concepts: (1) Texas law's characterization of property as either separate or community property; and (2) Idaho's ability to tax its own residents. It is true that this is a two-step analysis, but the steps must not be confused. First, we will apply Texas community property law to characterize Husband's Texas earnings as either community or separate property. This step determines whether Linda owns a one-half community interest in Husband's Texas earnings. Second, we will apply Idaho tax law to Linda, an Idaho resident. Crucially, Idaho tax law is not applied to Husband. In sum, this analysis determines: (1) whether Linda owns a one-half community interest in Husband's Texas income; and (2) how Idaho tax law treats Linda's one-half community interest in Husband's Texas income.

Linda's claim that Texas law should apply is correct, but only to a certain extent. Texas community property law is applied to characterize Husband's Texas earnings as either separate or community property and to determine Linda's interest in those earnings. But, Texas tax law is not applied because Idaho is taxing Linda, a resident of Idaho, not Husband. Applying Texas community property law makes clear that Linda owns a one-half community interest in Husband's Texas earnings. Linda is correct in pointing out that community property may be classified as special community property, but the Texas court in *Massey* demonstrated that the sole-management aspect of special community property does not render it immune from the non-

12

earning spouse's community property interest. *Massey*, 807 S.W.2d at 401 ("Each spouse owns an undivided one-half interest in all community assets and funds regardless of which spouse has management and control."). Therefore, according to Texas community property law, Linda owns a one-half community interest in Husband's Texas earnings because they are community property.

Linda's claim that Texas Family Code section 3.202(b) exempts her interest in Husband's sole-management special community property from Idaho's income tax is unpersuasive. The Texas court in *Kimsey* provided that both spouses are jointly and severally liable for tax due on a joint return. 965 S.W.2d at 696. The parties' stipulated facts indicate that Linda and Husband's filing status was "married filing jointly" during the Taxable Years. Therefore, Texas Family Code section 3.202(b) does not exempt Linda's one-half community interest in Husband's special community property from Idaho's income tax.

Lastly, Idaho Code section 63-3002, in conjunction with this Court's holding in *Parker*— that a state's power to tax a resident's out-of-state income is not unconstitutional—makes clear that Idaho may tax Linda's one-half community interest in Husband's Texas earnings. *Parker*, 148 Idaho at 846–47, 230 P.3d at 738–39 (quoting *Herndon v. West*, 87 Idaho 335, 393 P.2d 35 (1964)). In sum: Texas community property law characterizes Husband's earnings as community property; Linda owns a one-half community interest in said property; and, because Linda was domiciled in Idaho during the Taxable Years, her one-half community interest is subject to Idaho income tax.

Neither party requested attorney fees on appeal.

## VI. CONCLUSION

We affirm the district court's judgment. Costs on appeal are awarded to the Commission.

Chief Justice BURDICK, Justices EISMANN, HORTON and BRODY, CONCUR.